IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEE INGRAM and
PRUDENCE INGRAM,

             Plaintiffs,

    v.

CITIMORTGAGE, INC., REAL
PROPERTY MANAGEMENT, N.E.,
FEDERAL HOME LOAN
MORTGAGE CORP., a/k/a Freddie
Mac,

             Defendants.

CIVIL ACTION FILE NO.

1:12-CV-03053-CC-JFK

## **FINAL REPORT AND RECOMMENDATION**

       Plaintiffs Lee and Prudence Ingram filed this action in the Superior Court of Gwinnett County, Georgia, seeking injunctive relief and damages in connection with Defendants' foreclosure and post-foreclosure attempts to take possession of the property. [Doc. 1-1]. Defendants CitiMortgage, Inc. ("Citi") and Federal Home Loan Mortgage Corporation ("Freddie Mac") filed notice of removal. [Doc. 1].[1] Now

---

[1]Removal is based on the court's original jurisdiction over actions against Freddie Mac under 12 U.S.C. § 1452(f) and on the court's original federal question jurisdiction under 28 U.S.C. § 1331 as Plaintiffs seek relief under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. [See Doc. 1 at ¶¶ 2, 7-9]. Defendant Real Property Management, N.E.'s ("RPM") consent to removal is not required. See 28 U.S.C. § 1442(a).

pending before the court is Citi's and Freddie Mac's motion [Doc. 11] to dismiss the complaint as amended [Doc. 10], Plaintiffs' response [Doc. 12] and Defendants' reply [Doc. 13].[2]

The court will consider the sufficiency of the claims in the complaint as to all Defendants, that is, including Defendant RPM which, apparently, has not been served. [See Doc. 1 at 1 n.1].  As set forth in the attached service order, Plaintiffs will have the opportunity to present any objections to this report and recommendation, and the District Court will review those objections *de novo*.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  See also Martin v. Citimortgage, 2010 WL 3418320, at **2, 6 n.8 (N.D. Ga. August 3, 2010) (citing Shrivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 Fed. Appx. 121, 125, 127 (11th Cir. 2008); United States v. Willis, 273 F.3d 592, 597 n.6 (5th Cir. 2001) (noting that the two concerns of notice and an opportunity to be heard were satisfied because the magistrate judge raised the issue and allowed the party the opportunity to argue against those findings to the district court)).

---

[2]Plaintiffs' amended complaint supersedes and replaces Plaintiffs' original complaint.  [See Doc. 9].

## I.      FACTS

This action arises out Citi's foreclosure on the residential property that Plaintiffs Lee and Prudence Ingram purchased in Lilburn, Georgia, with a loan for $324,000 from ABN AMRO Mortgage Group, Inc. (the "Lender"), on July 18, 2006, and the Security Deed by which Plaintiffs gave the Lender, and the Lender's successors and assigns, the power to sell the property if Plaintiffs defaulted on the loan.  [Doc. 10 ¶ 7, Exhibit ("Ex.") A (the Security Deed); Doc. 11, Exs. A (the Note) and B (the Security Deed)].  In 2007, the Lender merged with Citi.  [Doc. 10 ¶ 9; Doc. 11, Ex. 3 (Certificate of Merger)].[3]

---

[3]When deciding a Rule 12(b)(6) motion, the court has discretion to determine whether to accept documents beyond the pleadings.  Rule 12(d) provides in pertinent part:  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. . . ."  Fed. R. Civ. P. 12(d) (as amended 2009).  However, an exception to this rule occurs when documents central to the plaintiff's case are referred to in the complaint.  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  And "this Circuit and others have relaxed th[e] rule to allow the Court to take judicial notice, see Fed. R. Evid. 201, of certain documents attached to a motion to dismiss, without converting the motion to one for summary judgment. These documents include public filings . . . [and] public records . . . ."  Harford v. Delta Air Lines, Inc., 2008 WL 268820, at *2 (N.D. Ga. January 30, 2008) (citations omitted).  Accordingly, the court has taken judicial notice of the public records attached to the motion to dismiss the complaint.

When Plaintiffs began having trouble making their $2,768.37/month loan payments in 2009, they turned to Citi to ask for a loan modification.  [Id. ¶ 8].  Citi allowed Plaintiffs to make a reduced loan payment of $1,492.00/month starting in April 2010 as part of a "trial modification program" or trial payment plan ("TPP").  [Id. ¶¶ 8, 9].  A photocopy of a DVD cover entitled "Citi Getting Your Modification Started!" reflects that Plaintiffs were applying for a loan modification through the "Home Affordable Modification Program" ("HAMP").  [Doc. 10, Ex. C].  A status update which Plaintiffs received by email in July 2010 states in pertinent part:

> Your mortgage assistance request is in the final stages of review.
> . . .
> We appreciate your patience during this time and look forward to helping you find a mortgage solution to manage your financial needs.

[Id. ¶ 10, Ex. D].  Attached to the complaint are bank statements reflecting that Plaintiffs paid the TPP amount, and Citi accepted their payments for ten months, from April 2010 through January 2011.  [Id., Ex. C].  Then, in February 2011, Citi refused to accept Plaintiffs' TPP payment and, with no notice of "intent to accelerate" the debt other than a 30-day notice of foreclosure, moved to foreclose on the property.  [Doc. 10 ¶ 9, 11].

4

The property was sold at non-judicial foreclosure sale on March 1, 2011, and purchased by Citi for $192,191.  [Id. ¶ 12, Ex. E ].  The Deed Under Power of Sale to Citi [id., Ex. E] was signed on March 16, 2011, and recorded on March 25, 2011, with the Gwinnett County Clerk of Superior Court, as well as a Special Warranty Deed from Citi to Freddie Mac [id., Ex. F].  The Special Warranty Deed documents an **"INDENTURE** made March 1, 2011," between Citi and Freddie Mac, and its successors and assigns, conveying to Freddie Mac "the . . . property [, a]ll rights . . . under the Security Deed[,] and . . . all of Grantor's claims and notes, and the judgment, if any, thereon representing the indebtedness heretofore secured by liens on the property . . . ."  [Id. ¶ 13, Ex. F].

Before the two Deeds were signed and recorded, Pendergast & Associates, P.C. ("Pendergast"), a non-party to this action, wrote to Plaintiffs in a letter dated March 14, 2011, stating, "Freddie Mac now owns [the property] as a result of foreclosure [on] March 1, 2011[,]" and notifying Plaintiffs that Pendergast was retained to proceed with eviction.  [Id. ¶ 14, Ex. G].  Pendergast filed a dispossessory action against Plaintiffs, on March 25, 2011, the day the Deed Under Power of Sale and Special Warranty Deed to Freddie Mac were recorded.  [Id. ¶ 15, Ex. H].  Plaintiffs were served with the dispossessory summons on March 31, 2011, and, on the same day, received an email

5

from Defendant RPM, "representing Home Steps, a unit of Freddie Mac[,]" offering Plaintiffs an opportunity to remain on the property and lease it on a "month to month basis." [Id. ¶ 17, Exs. I & K].  Attached to the lease offer is a letter from Freddie Mac stating, "We have instructed [RPM] to mange (sic) this home on our behalf until we decide to no longer rent the home or until we sell the home." [Id., Ex. K].

Plaintiffs began renting from RPM sometime in late April/May as tenants in the Home Steps program, paying $1,340/month. [Id. ¶¶ 17, 18; Ex. L].  Six months later, on November 27, 2011, Plaintiffs received an email from the Karen Armstrong Team at Coldwell Banker Residential Brokerage ("Coldwell") informing Plaintiffs that the property had been transferred to Coldwell and that Plaintiffs were facing eviction. Coldwell offered Plaintiffs "money to vacate via the cash for keys process" if they left the premises voluntarily. [Id. ¶ 20, Ex. N].  Plaintiffs chose to remain on the property [id. ¶ 21], and one hundred and three days later, in a letter dated March 9, 2012, Pendergast made a Demand for Possession of Premises based on the non-judicial foreclosure sale on March 1, 2011, to Citi [id. ¶ 22, Ex. P].  A dispossessory action was filed, and a dispossessory judgment was entered against Plaintiffs, in favor of Citi, on

6

April 9, 2012, plus a money judgment against Plaintiffs for $4,020 in past due rent and $1,340 per month rent until a final determination after any appeal.  [Id. ¶ 23, Ex. Q].

Plaintiffs filed this action in the Superior Court of Gwinnett County on July 18, 2012, to appeal the foreclosure and moved to consolidate their appeal of Citi's dispossessory action.  [Doc. 1-1; Doc. 10 ¶ 24, Ex. Q].  The parties subsequently dismissed the dispossessory action and any and all counterclaims without prejudice on August 15, 2012.  [Doc. 11, Ex. 5].  The complaint, as amended on October 23, 2012, alleges claims for violation of the FDCPA, Wrongful Foreclosure, Constructive Fraud, Breach of Contract, Bad Faith, and Promissory Estoppel and seeks Injunctive Relief and Damages.  [Doc. 10].

Additional facts will be set forth as needed to address Defendants' Fed. R. Civ. P. 12(b)(6) motion [Doc. 11] to dismiss Plaintiffs' Amended Complaint for failure to state a claim for which relief can be granted.

## II.    Standard of Law

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  "However, conclusory allegations,

7

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).  The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (as amended 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).

8

"Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And, a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not

decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356,

1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir.

1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on

a dispositive issue of law." Bernard v. Calejo, 17 F. Supp. 2d 1311, 1314 (S.D. Fla.

1998) (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d

1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the

basis of a dispositive issue of law, no construction of the factual allegations will

support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304,

1308 (11th Cir. 2006) (same); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336,

1350 (N.D. Ga. 2009).

The court will apply these standards in ruling on the motion to dismiss the

complaint.

## III.   Discussion

With the exception of the FDCPA claim in Count V, each claim in the complaint

is based on one of two allegations. Plaintiffs allege that, as "a reasonable person would

assert[,]" Citi's acceptance of Plaintiffs' timely, modified TPP payments for ten

months became a permanent modification of their mortgage loan [see, e.g., Doc. 10 ¶¶

25, 27] and that they had a month-to-month lease agreement and were paying the rent,

10

and, therefore, it was wrongful for Defendants to try to dispossess them [id. ¶¶ 27-28, 31, 43].  The court finds that each of the claims in the complaint is subject to dismissal for the following reasons.

### A.    The FDCPA Claim (Count V)

Plaintiffs claim that Citi violated the FDCPA, 15 U.S.C. § 1692f(6), by foreclosing without "a valid recorded assignment recorded in the Gwinnett County Superior Court prior to foreclosing" and, therefore, without a "present right to possession of the property" as required under the statute.   [Doc. 10 ¶¶ 51-54]. However, Citi merged with the Lender in 2007, as alleged in the complaint.  [Id. ¶ 9]. "When a merger becomes effective, each party . . . , except the resulting . . . company [ ] cease[s] to exist as a separate entity but [continues] in . . . a single corporation [which has] *without further act or deed*, all the property, rights, powers, trusts, duties, and obligations of each party to the plan. . . ."   O.C.G.A. § 7-1-536(c) (emphasis added).  "The clear purpose of this statutory provision was to eliminate the necessity of a formal transfer or assignment of the property of the constituent bank to the consolidated bank." State Bank & Trust Co. v. Newby, 170 Ga. App. 865, 866, 318 S.E.2d 738, 739 (1984) (citations omitted).  Therefore, a recorded assignment to Citi was not required.  The court accordingly **RECOMMENDS** that Plaintiffs' FDCPA,

11

15 U.S.C. § 1692f(6), claim against Citi be **DISMISSED WITH PREJUDICE**.  To the extent that Plaintiffs also attempt to state a FDCPA claim against either Defendant for trying to dispossess Plaintiff after the foreclosure, the court **RECOMMENDS** that such claims also be **DISMISSED WITH PREJUDICE**.

### B.      Plaintiffs' State Law Claims

The remaining claims in the complaint are state law claims for wrongful foreclosure, constructive fraud, breach of contract, bad faith, and promissory estoppel. Persuasive and binding authority compels the court to find that Plaintiffs lack standing to seek rescission of the foreclosure sale and that Plaintiffs cannot state a claim for damages under any of the legal theories espoused in the amended complaint.

### 1.      Standing and the Tender Rule

In Count I (for wrongful foreclosure ) and Count VI (for equitable estoppel), Plaintiffs seek rescission of the foreclosure sale.  [See Doc. 10, Prayer for Relief]. Defendants contend that Plaintiffs failed to tender the amount owed "under the Note" prior to bringing suit and that Plaintiffs also have "never made any offer to bring the loan current" or "now offered to pay that amount into the Court's registry"; therefore Plaintiffs do not have standing to seek rescission based on the wrongful foreclosure and equitable estoppel claims in Counts I and VI.  [Doc. 11 at 8-9].  Plaintiffs argue

that payment of the TPP amount for ten months is sufficient to give them a right to equitable relief. [Doc. 12].  But this court rejected a similar argument in <u>Moore v. McCalla Raymer, LLC</u>, --- F. Supp. 2d ---, 2013 WL 28253 (N.D. Ga. January 2, 2013), and held that attempts to resolve a default by seeking a loan modification "do not constitute a tender to pay giving [borrowers in default] the right to seek equity." <u>Id.</u>, at *7.  The tender required to have standing to pursue cancellation of a foreclosure sale is tender of the amount owing on the loan, that is, as stated by the Georgia Supreme Court, Plaintiffs must first "tender the amount due under the security deed and note."  <u>Berry v. Gov't Nat'l Mortg. Ass'n</u>, 231 Ga. 503, 503, 202 S.E.2d 450, 450 (1973) (citations omitted).  Plaintiffs' payment of the TPP amount is, therefore, insufficient and does not give Plaintiffs standing to challenge the foreclosure.[4]

---

[4]The cases cited in Defendants' brief are not directly on point on this issue. [<u>See</u> Doc. 11 at 8-9; Doc. 13 at 4].  For example, in <u>Morton v. Suntrust Mortg., Inc.</u>, 2010 WL 5055822, at *1 (N.D. Ga. November 5, 2010), <u>report and recommendation adopted by</u> 2010 WL 5055813 (December 6, 2010), and in <u>Mitchell v. Interbay Funding, LLC</u>, 279 Ga. App. 323, 325 n.4, 630 S.E.2d 909, 911 n.4 (2006), the plaintiffs were not making modified loan payments. And, in <u>Adams v. JPMorgan Chase Bank</u>, the court addressed the plaintiff's agreement to pay a reduced mortgage amount in the context of the plaintiff's contract claim, not as an issue of tender for standing. <u>Id.</u>, 2011 WL 2532925, at *2 (N.D. Ga. June 24, 2011).

There are exceptions to the tender rule, see Wright v. Intercounty Properties, Ltd., 283 Ga. 492, 493, 233 S.E.2d 160, 161 (1977); one exception is that "'a tender is unnecessary where the person to whom the money is due states that the tender would be refused if made[,]'" Mitchell, 279 Ga. App. at 325, 630 S.E.2d at 911 (citation omitted). However, the facts alleged by Plaintiffs do not have "'enough heft'" to state "'plausible'" claim that Citi would have refused Plaintiffs' tender of the full amount due under the Note. Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67). The court accordingly **RECOMMENDS** that the claims in Counts I and VI of the complaint for rescission of the foreclosure sale be **DISMISSED WITH PREJUDICE**.[5]

## 2.    HAMP Claims

Attached to the complaint is a photo of a DVD entitled "Citi Getting Your Modification Started!" -- the materials to complete for "your *Home Affordable Modification Program* Package." [Doc. 10, Ex. C (emphasis added)]. In Miller v. Chase Home Fin., LLC, 677 F.3d 1113 (11th Cir. 2012), the Eleventh Circuit Court of Appeals found "no discernable legislative intent to create a private right of action" for

_____

[5]The parties have not addressed whether tender is required to have standing to recover the damages, as opposed to equitable relief; therefore, the court does not address that issue.

14

borrowers engaged in a HAMP loan modification program and that there also is "no implied private right of action" under HAMP.  Id. at 1116; accord Jean v. American Home Mortg. Servicing, Inc., 2012 WL 1110090, at *4 (N.D. Ga. March 30, 2012) (holding that HAMP "neither expressly, nor impliedly, create[s] a cause of action or vest[s] 'mortgagors with third party beneficiary rights to enforce HAMP' agreements under state law") (citations omitted).  Therefore, Plaintiffs lack standing not only to pursue a HAMP claim but also to pursue the breach of contract, breach of implied duty of good faith, and promissory estoppel claims in the complaint insofar as such claims are premised on allegations that Citi had an obligation under HAMP to give Plaintiffs a permanent loan modification.  Miller, 677 F.3d at 1116-17.  The complaint as amended also fails to state a claim for relief as a matter of law to the extent that Plaintiffs' state law claims are based on allegations beyond HAMP, as discussed infra.

### 3.    Wrongful Foreclosure (Count I)

Plaintiff's first state law claim is for wrongful foreclosure.  To establish a claim of wrongful foreclosure, Plaintiffs must show "a legal duty owed to [them] by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [they] sustained, and damages."  Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004).  Plaintiffs allege

15

that Citi did not have the right to foreclose because an assignment of the security deed to Citi was not recorded prior to foreclosure.  "'A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose.'"  DeGolyer v. Green Tree Servicing, LLC, 291 Ga. App. 444, 449, 662 S.E.2d 141, 147 (2008) (citation omitted).  However, as discussed earlier, when Citi merged with the Lender in 2007, Citi assumed the Lender's rights, including the power of sale.  See O.C.G.A. § 7-1-536(c).  A formal transfer or assignment of the Security Deed to Citi was therefore not required; Citi stepped into the shoes of the Lender and could exercise the power of sale.  See Newby, 170 Ga. App. at 866, 318 S.E.2d at 739 (citations omitted); accord Ward v. City of Cairo, 276 Ga. 391, 394, 583 S.E.2d 821, 824 (2003) (citations omitted).

Citi, as successor by merger to the Lender, held the Security Deed at the time of foreclosure.  That is all that was required.  The Georgia Supreme Court has held, "Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."  You v. JP Morgan Chase Bank, N.A., -- S.E.2d --, 2013 WL 2152562, at *6 (Ga. May 20, 2013).

16

Plaintiffs allege that Citi did not give notice of its intent to accelerate debt prior to moving for foreclosure [Doc. 10 ¶ 11] and, in response to the motion to dismiss, argue for the first time that Plaintiffs did not receive notice of foreclosure [Doc. 12 at 5].[6]  Under O.C.G.A. § 44-14-162.2, notice of foreclosure must be given to the debtor "no later than 30 days before the date of the proposed foreclosure."  Nothing in the statute requires a separate, advance notice of the intent to accelerate the debt.  Thus, Plaintiffs have not stated a wrongful foreclosure claim against Defendants based on improper notice of intent to accelerate the debt.  The court accordingly **RECOMMENDS** that Plaintiffs' wrongful foreclosure claim be **DISMISSED WITH PREJUDICE**.

---

[6]The notice of foreclosure is not in the record before the court.  And, as argued by Defendants, Plaintiffs cannot amend their wrongful foreclosure claim by raising nonreceipt of the foreclosure notice for the first time in their response brief.  "Any claims not asserted in the plaintiff's Complaint are properly dismissed."  Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 126 S. Ct. 1195 (2006).  Furthermore,"under Georgia law, actual receipt of the notice of sale is immaterial because the notice is deemed given at the time it is sent."  Rule v. Chase Home Fin. LLC, 2012  WL 1833394, at *5 (M.D. Ga. May 18, 2012) (citing McCollum v. Pope, 261 Ga. 835, 836, 411 S.E.2d 874, 874 (1992)).

### 4.      Wrongful and Fraudulent Dispossession (Counts I and II)

Included in Count I are allegations that the Special Warranty Deed to Freddie Mac was ineffective and that Freddie Mac's dispossessory action was wrongful because Citi's foreclosure was wrongful.  Because the complaint does not state a claim for wrongful foreclosure as discussed *supra*, Plaintiffs' cannot base a claim for wrongful dispossession on allegations of wrongful foreclosure.  <u>See</u> <u>Solomon v. Norwest Mortg. Corp.</u>, 245 Ga. App. 875, 876, 538 S.E.2d 783, 784 (2000) ("'after foreclosure sale, the former owner cannot attack dispossession without first setting aside the foreclosure and deed'") (citation omitted).  Each of Plaintiffs' additional allegations fails to state a claim for relief against Defendants' for their attempts to take possession of the property.

Plaintiffs allege that Freddie Mac's dispossessory action was wrongful and fraudulent because the Deed Under Power of Sale to Citi and Special Warranty Deed to Freddie Mac had not yet been signed and recorded and, therefore, Freddie Mac did not have an interest in the property on March 14, 2011, when it wrote that Freddie Mac "now owns" the property and that Pendergast was retained to file a dispossessory proceeding against Plaintiffs.  [Doc. 10 (Counts I & II) ¶¶ 27, 36].  Plaintiffs argue that under O.C.G.A. § 44-2-2, a corporate document does not take effect until it is filed.

18

[Doc. 12 at 15].  However, "[u]nder Georgia [foreclosure] law, a valid foreclosure divests all of the debtor's rights and title in the property" as of the moment of the sale. In re Williams, 393 B.R. 813, 817-18 (M.D. Ga. 2008) (citations omitted); and see Solomon, 245 Ga. App. at 876, 538 S.E.2d at 784 (stating that "where the grantor . . . in a security deed remains in possession of the premises after lawful foreclosure of the deed, [she] is a tenant at sufferance and is subject to be summarily dispossessed by the purchaser at the foreclosure sale") (citation omitted); McKinney v. South Boston Sav. Bank, 156 Ga. App. 114, 116, 274 S.E.2d 34, 36 (1980) (holding that debtor "became a tenant at sufferance even though there was no deed conveying the property to [the purchaser] as [the purchaser] has sufficient title by being the grantee in the security deed and the purchaser at the foreclosure sale, which gave [the purchaser] the right to bring dispossessory proceedings . . .") (citing Redwine v. Frizzell, 184 Ga. 230(7), 190 S.E. 789, 793 (1937)).  Title to the property and the right to dispossess Plaintiffs were, thus, transferred to Citi on March 1, 2011, at the foreclosure sale, giving Citi the authority to transfer those rights to Freddie Mac by Special Warranty Deed.  Recording the Deed Under Power of Sale to Citi and the Special Warranty Deed to Freddie Mac simply secured Defendants' interest in the property insofar as third parties are concerned, giving third parties constructive notice of the existence of each

19

deed.  See City Wholesale Co. v. Harper, 100 Ga. App. 151, 155, 110 S.E.2d 561, 564 (1959) (citations omitted).  The court accordingly **RECOMMENDS** that Plaintiffs' claim that Freddie Mac wrongfully or fraudulently tried to dispossess Plaintiffs be **DISMISSED WITH PREJUDICE**.

Plaintiffs allege that Citi's attempt to dispossess Plaintiffs was also fraudulent and wrongful because "[h]aving transferred title to [Freddie Mac], Citi no longer had claim to [the] Property" and, therefore, did not have the right to dispossess Plaintiffs. [Doc. 10 ¶¶ 27, 37, 43].  However, on December 14, 2011, Freddie Mac conveyed the property back to Citi by Grant Deed Without Warranty, recorded on December 22, 2011, with the Clerk of Superior Court, Gwinnett County, which Defendants have attached to the motion to dismiss.  [Doc. 11, Ex. 4].  The court accordingly **RECOMMENDS** that Plaintiffs' claims against Citi for a wrongful or fraudulent dispossessory action be **DISMISSED WITH PREJUDICE**.

### 5.    Breach of Contract Claims (Count III)

#### a.    Foreclosure

Because HAMP does not create a private right of action, "borrowers are increasingly bringing contract claims . . . for breach[ of ] purported loan modification agreements." Gass v. CitiMortgage, Inc., 2012 WL 3201400, at *7 (N.D. Ga. June 25,

2012), report and recommendation adopted by 2012 WL 3156770 (July 19, 2012).

Plaintiffs' Count III claim for breach of contract is premised on the same allegation discussed earlier that a permanent loan modification agreement was formed between the parties through Citi's acceptance of Plaintiffs' payment of the TPP amount for ten months.  [Doc. 10 ¶ 40].

To state a claim for relief for breach of contract, under OCGA § 13-3-1, Plaintiffs must plead three elements: the "subject matter of the contract, consideration, and mutual assent by all parties to all contract terms."  Broughton v. Johnson, 247 Ga. App. 819, 821, 545 S.E.2d 370, 371 (2001).  Defendants contend that Plaintiffs have not stated a breach of contract claim because:  (1) Plaintiffs' payment of the TPP amount did not constitute consideration for a permanent loan modification since Plaintiffs had a pre-existing duty to pay Citi under the terms of the Note; (2) under the Statute of Frauds, mortgage agreements must be evidenced by a signed writing, and Plaintiffs have failed to demonstrate that there was a written loan modification agreement; and (3) Defendants argue that TPPs are not enforceable contracts requiring modification of a loan and that Plaintiffs' TPP did not address all essential terms for a loan modification agreement.  [Doc. 13 at 7].

21

Defendants are correct that Plaintiffs' payment of the TPP amount was not consideration for a permanent loan modification.  The status report that Plaintiffs received after three or four months of paying the TPP amount stating, in pertinent part, "Your mortgage assistance request is in the final stages of *review*" [Doc. 10, Ex. D (emphasis added)], does not demonstrate that the loan modification was or would be made permanent. "Indeed, precedent compels the Court to find an absence of consideration" for a permanent, enforceable loan modification despite Plaintiffs' payment of the TPP amount for ten months. <u>Adams</u>, 2011 WL 2532925, at *2 (holding that agreement to permit borrower to make reduced payments on money already owed lacked consideration because the plaintiff "already had an existing obligation to comply with the Note's terms") (citing <u>Dixon v. JPMorgan Chase Bank</u>, No. 1:10-CV-01598-HLM, Doc. 13 at 19-24 (N.D. Ga. August 9, 2010) (holding that "an agreement to pay a reduced mortgage amount was not adequate consideration to support a contract to modify the mortgage because the plaintiff was already legally obligated to pay the money owed under the mortgage") (internal quotation marks omitted)); <u>Citizens Trust Bank v. White</u>, 274 Ga. App. 508, 618 S.E.2d 9, 11-12 (2005) (holding that a payment made "for the bank to not foreclose on a property was not adequate consideration

because it was for 'payment of a debt that [the mortgagor] already owed'") (citation omitted))).

Courts have held that if a plaintiff incurs additional "cognizable legal detriments" by entering into a TPP, such detriments can constitute adequate consideration for an enforceable loan modification. <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547, 564 (7th Cir. 2012).  And the possibility has been recognized by this court.  <u>See</u> <u>Gass</u>, 2012 WL 3201400, at *10 n.5 (stating that the plaintiffs' acceptance of the TPP would have created new obligations which at least amounted to "'the slightest trouble or inconvenience'" and thus constituted adequate consideration) (citation omitted).  But, as argued by Defendants [<u>see</u> Doc. 13 at 8-9 & n.2], Plaintiffs have not pled facts showing that they incurred any legal detriment beyond paying the trial modification payments.  Therefore, Plaintiffs have not alleged the consideration required to state a breach of contract claim.

Plaintiffs also have not stated a claim for breach of a permanent loan modification contract because under the Statute of Frauds, mortgage agreements must be evidenced by a signed writing, and Plaintiffs have failed to demonstrate that there was a written loan modification agreement. Unlike the <u>Benjamin</u> and <u>Gass</u> cases, Plaintiffs in this action have not attached to the complaint any written document

23

specifying the terms of the TPP, nor have Plaintiffs recited in the complaint language allegedly in Citi's purported loan modification agreement with Plaintiffs.   Cf. Benjamin v. BAC Home Loans Servicing, LP, 2012 WL 1067999, at *5 (S.D. Ga. March 29, 2012) (where the TPP agreement and other letters from BAC were before the court for review); Gass, 2012 WL 3201400, at *10 n.5 (where both TPP offers were part of the record).   "Under the statute of frauds, '[a]ny commitment to lend money' is unenforceable unless it is 'in writing and signed by the party to be charged therewith. . . .'"  Vie v. Wachovia Bank, N.A., 2012 WL 1156387, at *4 (N.D. Ga. April 6, 2012) (quoting O.C.G.A. § 13-5-30(7)).   "Contracts for the sale of land or an interest in land must also be in writing to comply with the statute of frauds."  Id. (citing O.C.G.A. § 13-5-30(4)); accord Gass, 2012 WL 3201400, at 10 n.5 ("The statute of frauds requires that loan agreements, including mortgage agreements, be 'in writing and signed by the party to be charged therewith.'") (citation omitted); see also Han v. Han, 295 Ga. App. 1, 3, 670 S.E.2d 842, 844 (2008).   "Furthermore, . . . 'any modification of the contract must also be in writing.'"  Vie, 2012 WL 1156387, at *4 (quoting Walden v. Smith, 249 Ga. App. 32, 34, 546 S.E.2d 808, 810 (2001) (citation omitted)).[7]   And Plaintiffs

---

[7]Plaintiffs' citations to cases from other jurisdictions [see Doc. 12 at 7-8] are neither persuasive nor binding.

24

have not introduced any writing that would satisfy the statute of frauds for a breach of contract claim.

Defendants argue that Plaintiffs' breach of contract claim also fails because "TPPs are not enforceable contracts requiring modification of a loan." [Doc. 13 at 7]. Courts have recognized that a TPP could become an enforceable contract.  To be an enforceable agreement under Georgia law, the TPP would have to be "complete in itself, leaving nothing to rest in parol." Pettit v. Gray, 211 Ga. App. 439, 439, 439 S.E.2d 673, 674 (1993) (citing F.C. Brooks & Sons v. Shell Oil Co., 226 Ga. 435, 437, 175 S.E.2d 557, 559 (1970)).  Compare Gass, 2012 WL 3201400, at *9 (holding that the complaint failed to plead the existence of an enforceable loan modification contract where the TPP offer did not specify the interest rate that would apply post-modification or the maturity date of the loan), with White v. BAC Home Loans Servicing, LP, 2011 WL 4479299, at *6 (N.D. Ga. September 26, 2011) (finding a binding contract where the letter offer to the plaintiff "recites all essential terms of the Loan Modification Agreement: . . . the property subject to the mortgage, . . . the total amount to be added to the Plaintiff's loan, the amount of his modified monthly payments, his new interest rate, and the new loan maturity date").

25

The court agrees with Defendants, however, that the complaint as amended fails to allege "any of the essential terms relating to how payments would be applied to interest and principal, what interest rate was being charged, and whether the maturity of the loan was affected." [Doc. 11 at 13]. And, therefore, the complaint "does not contain factual content that allows the court to draw the reasonable inference that the defendant is liable" for breaching a contract with Plaintiff. Ashcroft, 129 S. Ct. at 1949 (citation and internal quotation marks omitted). Leave to amend the complaint a second time is not warranted because Plaintiffs have already amended the complaint once and failed to point to any scintilla of writing indicating that the parties agreed to all of the essential terms required for an enforceable loan modification agreement. The court therefore **RECOMMENDS** that Plaintiffs' claim that foreclosure was a breach of an enforceable loan modification agreement be **DISMISSED WITH PREJUDICE**.

### b.  The Dispossessory Actions

Plaintiffs allege that Defendants "effectively breached the leasing agreement" between Plaintiffs and Freddie Mac. [Doc. 10 ¶ 43]. The first dispossessory action was filed by Pendergast on behalf of Freddie Mac, on March 25, 2011, the day the Deed Under Power of Sale and Special Warranty Deed to Freddie were recorded. [Id. ¶ 15, Ex. H]. Plaintiffs were served with the dispossessory summons on March 31,

26

2011, and on March 31, received an email from Defendant RPM "representing Home Steps, a unit of Freddie Mac" offering Plaintiffs an opportunity to remain on the property and lease the property on a "month to month basis."  [Id. ¶ 17, Exs. I & K]. Thus, there was no lease agreement or lease offer when the dispossessory action was filed for Freddie Mac on March 25, 2012.  Plaintiffs' breach of contract claim against Freddie Mac therefore fails to state a claim for relief.

Plaintiffs admit that their lease was on a month to month basis [Doc. 10 ¶ 17] but allege that "[a]t no time did Plaintiffs receive a letter indicating a termination of their lease with Freddie Mac though (sic) RPM, nor did [Citi] send the required sixty day notice" [id. ¶ 22].  Plaintiffs contend that sixty-days notice of eviction was required because "no termination date or time was ever listed in" the lease agreement which changed their lease to a "tenancy at will" under O.C.G.A. § 44-7-6.  [Doc. 12 at 9-10].  The offer to let Plaintiffs lease the premises stated only that the lease offer was "*until we* [Freddie Mac's Home Steps program] *decide to no longer rent the home or until we sell the home*."  [Doc. 10, Ex. K (emphasis added)].

Even if the lease agreement would, with that language, be considered a tenancy at will, which the court does not decide today, the complaint, viewed in the light most favorable to Plaintiffs, demonstrates that Plaintiffs were given more than sixty days

27

notice of eviction.  Plaintiffs began renting from RPM sometime in late April/May. [Id. ¶¶ 17, 18, Ex. L].  Six months later, on November 27, 2011, Coldwell notified Plaintiffs that the property had been transferred to Coldwell, that Plaintiffs were facing eviction, and that Coldwell was offering Plaintiffs "money to vacate via the cash for keys process" if they left the premises voluntarily.  [Id. ¶ 20, Ex. N].  Then, on March 9, 2012, one hundred and three days after Coldwell's notice that eviction would be filed, Pendergast sent a Demand for Possession of Premises to Plaintiffs who had chosen not to leave the property voluntarily.  [Id. ¶ 22, Ex. P].  The complaint thus demonstrates that Plaintiffs were given more than one hundred days notice that the lease would be terminated and that they would be evicted before an eviction proceeding was filed.  For the above reasons and authority, the court **RECOMMENDS** that Plaintiffs' contract claims against Freddie Mac and Citi for breach of the month-to-month lease after foreclosure be **DISMISSED WITH PREJUDICE**.

### 6.    Remaining Claims

The remaining claims in the complaint allege that Citi committed constructive fraud (Count II), acted in bad faith (Count IV) and should be estopped from foreclosing and dispossessing Plaintiffs (Count IV), because Plaintiffs paid the TPP

28

amount for ten months and made monthly lease payments after foreclosure.  [See, e.g., Doc. 10 ¶¶ 36, 47, 56-57].  Plaintiffs' bad faith and promissory estoppel claims fail to state a claim for relief because, as discussed earlier, Plaintiffs do not have a right of action against Citi for a permanent loan modification nor can Plaintiffs state a claim against either Defendant for violation of the lease agreement after foreclosure.

Plaintiffs have demonstrated only that they were trying to obtain a HAMP loan modification [Doc. 10, Ex. C] and that their loan modification request was "in the final stages of _review_" [Doc. 10, Ex. D (emphasis added)], not the final stages of approval.  "'Promissory estoppel does not . . . apply to vague or indefinite promises, or promises of uncertain duration.'"  McGowan v. Homeward Residential, Inc., 500 Fed. Appx. 882, 885 (11th Cir. 2012) (quoting Georgia Invs. Int'l, Inc. v. Branch Banking and Trust Co., 305 Ga. App. 673, 675, 700 S.E.2d 662, 664 (2010)).  And Plaintiffs' factual allegations and exhibits do not indicate even a vague or indefinite promise by Citi to give a permanent loan modification.

Because "there is no breach of the underlying contract, there is [also] no cause of action for breach of the covenant of good faith and fair dealing."  Gass, 2012 WL 3201400, at *13 (citing Stuart Enterprises Int'l, Inc. v. Peykan, Inc., 252 Ga. App.

231, 234, 555 S.E.2d 881, 884 (2001)); <u>accord</u> <u>In re Salvador</u>, 456 B.R. 610, 620

(M.D. Ga. 2011) (dismissing breach of contract, good faith and fair dealing, and

promissory estoppel claims where plaintiffs alleged a breach of contract claim based

on a TPP stating, *inter alia*, that "'every court that has reviewed this issue has

unanimously agreed that a defendant's failure to provide a permanent loan

modification solely on the basis of the existence of a TPP does not sufficiently state

a breach of contract claim'") (citation omitted); <u>U.S. Bank, N.A. v. Phillips</u>, 318 Ga.

App. 819, 825, 734 S.E.2d 799, 803 (2012) (holding that the trial court erred when

it failed to dismiss breach of implied covenant of good faith and fair dealing claim

because the plaintiff could not state a claim based on a HAMP loan modification and

had not set forth any breach of contract claim that was independent of U.S. Bank's

obligations under HAMP).  The court accordingly **RECOMMENDS** that Plaintiffs'

claims for bad faith (Count IV) and promissory estoppel (Count IV) be **DISMISSED**

**WITH PREJUDICE**.

Plaintiffs' amended complaint also fails to state a claim for constructive fraud

(Count II).  "Obviously, one cannot sue in fraud based upon the alleged breach of an

oral contract which would itself be unenforceable under the Statute of Frauds . . . ."

<u>Kamat v. Allatoona Fed. Sav. Bank</u>, 231 Ga. App. 259, 262-63, 498 S.E.2d 152, 155

(1998) (citation and internal quotation marks omitted).   The court accordingly **RECOMMENDS** that Plaintiffs' claim for constructive fraud be **DISMISSED WITH PREJUDICE**.

## IV.    Conclusion

The undersigned **RECOMMENDS** that Defendants' motion [Doc. 11] to dismiss the amended complaint [Doc. 10] be **GRANTED**.  The court **FURTHER RECOMMENDS** that Counts I-VI be **DISMISSED WITH PREJUDICE** and that Counts VII and VIII, for injunctive relief and damages, accordingly be **DISMISSED AS MOOT** as to all Defendants.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 08-01 (N.D. Ga. June 12, 2008).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED THIS** 18th day of June, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

31